THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                                   Plaintiff,

       v.

DARRYL KILGORE,

                                   Defendant.

CASE NO. CR17-0203-JCC

ORDER

This matter comes before the Court on Defendant's motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b) (Dkt. No. 281) and the parties' motions for leave to file over-length motions and briefs (Dkt. Nos. 280, 284, and 295).[1] Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion to dismiss the indictment (Dkt. No. 281) for the reasons explained herein.[2]

---

[1] The Court hereby GRANTS the parties' motions for leave to file over-length motions and briefs (Dkt. Nos. 280, 284, and 295).

[2] Defendant requests an evidentiary hearing. (*See* Dkt. No. 281 at 1.) However, the Court finds the record is sufficient to decide this motion and declines Defendant's request.

One week after filing his reply brief, Defendant submitted a supplemental filing in which he argues that if the Court were to grant him an evidentiary hearing, he could introduce additional evidence to establish that he had refused an escrow extension—specifically, evidence of 11 phone calls between Defendant and Mitchell. (Dkt. No. 297 at 1.) But Defendant offers no explanation for why he did not introduce the evidence in his original motion. And in an

I.      **BACKGROUND**

Defendant was one of three managers of the DEK Group, LLC. (Dkt. No. 281 at 2.) On August 24, 2017, a federal grand jury indicted Defendant on charges of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344, bank fraud in violation of 18 U.S.C. § 1344(2), aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (Dkt. No. 48.) The criminal complaint alleges that from July 2014 to July 2017, Defendant traveled across the country stealing wallets from women as they shopped for groceries. (Dkt. No. 1 at 2–6.) The complaint further alleges that Defendant used stolen credit and debit cards to withdraw funds from the victims' accounts and laundered the funds through DEK, which served as a shell company. (*Id.* at 6–12.) Defendant then allegedly used the funds to purchase, renovate, and sell real properties, all titled in DEK's name. (*Id.* at 8.) On July 25, 2017, Defendant was arrested. (Dkt. No. 11 at 1.)

Before Defendant was arrested, the Government sought a warrant for seizure of funds held in DEK's bank account. *See Sealed Seizure Warrant*, Case No. MC17-0075-JLW, Dkt. No. 1 (W.D. Wash. 2017). After Defendant's arrest, the Government filed a civil complaint seeking forfeiture of a property DEK owned in San Gabriel, California (the "San Gabriel property"). *See United States v. The Real Property Commonly Known as 101 West Hermosa Drive et al.*, Case No. C17-1138-JCC, Dkt. No. 1 (W.D. Wash. 2017). The Government alleged that the property represented proceeds traceable to or involved in Defendant's alleged bank fraud and money

---

unauthorized surreply, Defendant attaches what he purports to be a summary of those phone calls, but without explanation as to how the summary was created or by whom, let alone a sworn declaration attesting to its accuracy. (*See* Dkt. No. 300-1.) The alleged calls at issue concern Defendant's and Mitchell's purported opposition to the escrow extension and the sale of the San Gabriel property and do not include evidence of governmental misconduct. (*See* Dkt. No. 300 at 2.) Instead, Defendant appears to blame his own real estate agent "Steveo" Miles and the escrow company for allowing the sale to the proceed. (*See* Dkt. No. 300-1 at 8–9.) Thus, Defendant has not established that an evidentiary hearing is necessary to decide this motion.

laundering conspiracy. (*Id.* at 2.)

During this time, the San Gabriel property was under contract to sell. (Dkt. No. 1 at 41.) On July 27, 2017, the Government filed a *lis pendens* against the San Gabriel property. *See 101 West Hermosa Drive et al.*, Case No. C17-1138-JCC, Dkt. No. 3. On August 14, 2017, the escrow company for the San Gabriel property sale learned about the *lis pendens* and placed a stop on the sale proceedings. (Dkt. No. 285-1 at 20.) The next day, DEK manager James Mitchell and Defendant discussed the effect of the *lis pendens* on the San Gabriel property and whether the Government would seize the proceeds if the sale went through. (Dkt. No. 289, Timestamp 1:30–3:22.) But the prospective buyers of the San Gabriel property remained interested and their agent notified DEK's real estate agent Steven Miles and the Government that the buyers had agreed to extend the escrow closing date to August 25, 2017. (*See* Dkt. No. 281-5 at 31, 34.) On August 17, 2017, Mitchell confirmed to DEK's lender that the sale was set to close on August 25, 2017, before an overdue payment would hit the 30-day mark. (Dkt. No. 285-1 at 78.) The record does not show that Mitchell or another DEK agent signed the escrow extension.

The Government informed the escrow company that it had no objection to the company releasing funds from escrow. (*Id.* at 22.) The Government then sought and obtained a second warrant authorizing seizure of any funds to DEK resulting from the sale. (*See* Dkt. No. 285 at 7.) On August 21, 2017, the Government delivered a release of the *lis pendens*, which allowed the sale to proceed. (Dkt. No. 285-1 at 86.) On August 25, 2017, the sale was completed. (*Id.* at 103.) Five days later, pursuant to the second seizure warrant, the escrow company sent a cashier's check to the U.S. Secret Service in the amount of $265,704.95. (Dkt. No. 105 at 2.)

Defendant contends that the Government knowingly caused the sale to proceed over his and Mitchell's objections. (Dkt. No. 281 at 2.) Defendant alleges that because the sale proceeded, he was unable to complete renovations on and fully profit from the sale of a different property. (Dkt. No. 281 at 12.) The Government maintains that it communicated with the buyers' agent and escrow company only to ensure the Government did not interfere with the sale. (Dkt.

1  No. 285 at 4.) Defendant now moves to dismiss the indictment against him based on outrageous

2  government conduct. (*Id.* at 1.)

3  **II.      DISCUSSION**

4         **A.      Legal Standard**

5       A court may dismiss an indictment because of outrageous government misconduct either

6  based on a due process violation or under the court's supervisory powers. *United States v.*

7  *Luttrell,* 889 F.2d 806, 811 (9th Cir. 1989). The Supreme Court has recognized that there may be

8  situations "in which the conduct of law enforcement officials is so outrageous that due process

9  principles would absolutely bar the Government from invoking judicial process to obtain a

10  conviction." *United States v. Russell*, 411 U.S. 423, 432–33 (1973). "Dismissing an indictment

11  on due process grounds historically has been employed in a 'slim category of cases' involving

12  police brutality or 'physical or psychological coercion against the defendant.'" *United States v.*

13  *Toilolo*, 666 F. App'x 618, 620 (9th Cir. 2016) (quoting *United States v. Simpson*, 813 F.2d

14  1462, 1465–66 (9th Cir. 1987)). The defense of outrageous government conduct is thus reserved

15  for conduct that is "so grossly shocking and so outrageous as to violate the universal sense of

16  justice." *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991) (quoting *United States v.*

17  *O'Connor*, 737 F.2d 814, 817 (9th Cir.1984).

18       Dismissal of an indictment under the doctrine of outrageous government conduct is

19  exceedingly rare. *See United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013). In one case, a

20  conviction was reversed after government agents supplied a hard-to-obtain, essential ingredient

21  for manufacture of illegal drugs; in another, government agents encouraged and provided

22  supplies for an illegal bootlegging operation over the course of two years. *See United States v.*

23  *Twigg*, 588 F.2d 373 (3d Cir. 1978); *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971). In

24  contrast, the Ninth Circuit held that a government agent who had sexual relations and used

25  cocaine with a suspect, before and after being commissioned by a government agent to gather

26  evidence, did not engage in conduct so outrageous as to warrant dismissal of the indictment. *See*

*Restrepo*, 930 F.2d at 713. And "troubling" reverse sting operations initiated without individualized suspicion or evidence of a preexisting criminal conspiracy did not constitute outrageous conduct, so long as the defendant was a willing participant. *See Black*, 733 F.3d at 305–06 (holding government agents' conduct was not outrageous where they recruited the defendants to carry out an armed robbery of a fictional cocaine stash house); *see also United States v. Simtob*, 901 F.2d 799, 809 (9th Cir. 1990) (holding that government agents' alleged exploitation of the defendant's sympathies, "tampering" with a witness, and "destruction of evidence," while "reprehensible," did not rise to the level of a due process violation).

If the government conduct does not rise to the level of a due process violation, a court may dismiss an indictment under its supervisory powers for "flagrant" conduct resulting in "substantial prejudice" to the defendant where "no lesser remedial action is available." *Toilolo*, 666 F. App'x at 619–21 (9th Cir. 2016) (quoting *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993)).

### B.     Motion to Dismiss the Indictment

Defendant argues that the Government's actions authorizing the sale of the San Gabriel property were so outrageous that he is entitled to dismissal of all charges against him.[3] (Dkt. No. 281 at 1.) The legal basis of Defendant's argument for dismissal is not entirely clear. In support of his motion, Defendant cites a hodgepodge of legal authority, (*see* Dkt. No. 281 at 3, 11), but he does not explain why the Government's alleged role in authorizing the sale of his property constitutes a due process violation "so grossly shocking and so outrageous as to violate the universal sense of justice," *Restrepo*, 930 F.2d at 712. Moreover, the sale of the San Gabriel property occurred after Defendant was indicted; successful motions to dismiss an indictment

---

[3] Defendant also alleges that the sale of the San Gabriel property has deprived him of his Sixth Amendment right to an attorney of his choosing. (Dkt. No. 281 at 2, 4, 13.) But in his reply, Defendant does not dispute that he has no right to use seized assets that will become the property of the United States if a conviction occurs. *See Kaley v. United States*, 571 U.S. 320, 327 (2014) (citing *United States v. Monsanto*, 491 U.S. 600, 615 (1989)). Thus, his inability to use these assets to retain an attorney did not violate his Sixth Amendment rights.

1   generally involve due process violations arising out of outrageous government conduct in the

2   genesis, investigation, or prosecution of the alleged crime. *See Luttrell,* 889 F.2d 806, 811 (9th

3   Cir. 1989); *Toilolo,* 666 F. App'x at 620. As the Government observes, dismissal of an

4   indictment due to outrageous government conduct is extraordinary relief and is rarely granted.

5   (Dkt. No. 285 at 9.) Defendant's reply brief leaves the Government's discussion of why

6   Defendant fails to meet the legal standard entirely unanswered. (*See generally* Dkt. No. 294.)

7   And Defendant does not persuasively argue that the Government's alleged role in the sale of an

8   investment property would constitute conduct so outrageous as to require dismissal of the

9   criminal charges against him.

10          Furthermore, Defendant lacks support for his factual assertions that the Government

11   caused the sale. Defendant makes vague, conclusory allegations that the Government took

12   control of the pending escrow, caused the sale to be finalized over Defendant's and Mitchell's

13   objections, knowingly caused waste of a second DEK investment property, and failed to assist

14   Defendant in preservation of his assets. (*See* Dkt. No. 281 at 2–4.) But the exhibits attached to

15   Defendant's motion do not show that the Government had any role in extending the escrow or

16   authorizing the sale to proceed. (*See generally* Dkt. Nos. 281-4–281-6.) In those exhibits, the

17   buyers' real estate agent emailed Defendant's real estate agent Miles on August 15, 2017, to

18   confirm the new escrow closing date of August 25, 2017, and emailed Miles again the next day

19   to state that the agent would send Miles the escrow extension addendum. (Dkt. No. 281-5 at 33–

20   34.) In other correspondence, the Government repeatedly stated that it was up to the parties

21   whether to proceed with the sale and inquired multiple times as to whether the parties planned to

22   proceed with closing on August 25, 2017. (*See* Dkt. No. 285-1 at 37, 81–2, 90, 105.) Defendant

23   also argues that the Government authorized disbursement of proceeds to Aztec Financial, but this

24   is contradicted by the record, which shows that Mitchell authorized the transfer. (*Compare* Dkt.

25   No. 281 at 5, *with* Dkt. No. 285-1 at 75.) Thus, Defendant has failed to offer evidence that would

26   indicate the Government played an improper role in the sale of the property. Therefore,

Defendant has not carried his heavy burden to establish that the Government's actions so shock the conscience as to warrant dismissal of the indictment based on outrageous government conduct. *See Restrepo*, 930 F.2d at 712.

Nor is an exercise of the Court's supervisory powers warranted. To justify that exercise, the Government's misconduct must be flagrant and cause substantial prejudice to the defendant. *See Kearns*, 5 F.3d at 1253. Defendant argues that if the sale of the San Gabriel property had not occurred, the sale of a second DEK property would have been profitable and he could have applied its proceeds to his restitution at sentencing. (Dkt. No. 281 at 12.) But Defendant does not dispute that the U.S. Sentencing Guidelines squarely foreclose this argument because loss amounts can be reduced only by "money returned . . . by the defendant . . . to the victim *before* the offense was detected." USSG § 2B1.1 cmt. 3(E)(i) (emphasis added); (*see generally* Dkt. No. 294). Thus, Defendant has not established substantial prejudice required for dismissal of the indictment under the Court's supervisory powers. *See Kearns*, 5 F.3d at 1253.

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b) (Dkt. No. 281) is DENIED.

DATED this 17th day of August 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE